1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ariadne Panagopoulou (AP-2202)
Pardalis & Nohavicka, LLP
950 Third Avenue, 25th Floor
New York, NY 10022
Telephone: (718) 777-0400
Facsimile: (718) 777-0599
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Benjamin Boyd, Graham Bancroft, and Chantelle McGuffie, *on behalf of themselves and others similarly situated,*<br><br>*Plaintiffs,*<br><br>-v-<br><br>H.E. Sheikh Jassim bin Abdulaziz Al- Thani and H.E. Sheikha Al Mayassa bint Hamad Al-Thani, *jointly and severally*<br><br>_____ *Defendants.* | **FLSA COLLECTIVE ACTION COMPLAINT** |

## NATURE OF THE ACTION

1.      Plaintiffs Benjamin Boyd, Graham Bancroft, and Chantelle McGuffie, ("Plaintiffs"), bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. seq.* on behalf of themselves and others similarly situated, in order to remedy Defendants' wrongful withholding of Plaintiffs' earned wages and overtime compensation. Plaintiffs also bring these claims under New York Labor Law ("NYLL"), Article 6, §§ 190 *et. seq.*, and Article 19, §§ 650 *et. seq.*, as well as the supporting New York State Department of Labor Regulations for violations of minimum wage and overtime wage requirements, unpaid straight wages, and notice and record-keeping requirements. Finally, Plaintiff Benjamin Boyd brings a

claim of retaliation under the FLSA and the NYLL.

2.     Defendants engaged in their unlawful conduct pursuant to a policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL. Defendants' conduct extended beyond the Plaintiffs to all other similarly situated employees. Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and those other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

### Federal Question Jurisdiction and Supplemental Jurisdiction

6.     This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the civil action herein arises under the laws of the United States, namely, the Fair Labor Standards Act and 29 U.S.C. §§ 201 *et seq*. Additionally, this Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367(a).

### Personal Jurisdiction

7.     This Court may properly maintain personal jurisdiction over Defendants under Rule 4 of the Federal Rules of Civil Procedure because Defendants' contacts with this state and this judicial district are sufficient for exercise of jurisdiction over Defendants so as to comply with traditional notions of fair play and substantial justice.

### Venue

8.     Venue is proper in the Southern District of New York under 28 U.S.C. §§ 1391 (b) (1) and (2) because Defendants are residents of this judicial district and because a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in

this judicial district.

## THE PARTIES

**Plaintiffs:**

9.     Plaintiff Benjamin Boyd ("Boyd") is an adult individual residing in the State of New York, County of New York.

10.     Plaintiff Graham Bancroft ("Bancroft") is an adult individual residing in the State of New York, County of New York.

11.     Plaintiff Chantelle McGuffie ("McGuffie") is an adult individual residing in the State of New York, County of New York.

12.     During the relevant time period, Plaintiffs were covered employees within the meaning of the FLSA, 29 U.S.C. § 203(e) and the NYLL § 190, employed by Defendants, H.E. Sheikh Jassim bin Abdulaziz Al- Thani and H.E. Sheikha Al Mayassa bint Hamad Al-Thani, (collectively "Defendants").

13.     Plaintiffs were employees engaged in commerce since a substantial part of their job requirements, as outlined in their respective employment agreements, was to frequently accompany the Defendants to foreign states and foreign countries in order to perform their job functions.

14.     Plaintiffs consented in writing to be parties to the FLSA claims in this action, pursuant to 29 U.S.C. §216(b), and their consent forms are attached hereto.

**Defendants:**

15.     H.E. Sheikh Jassim bin Abdulaziz Al- Thani ("Jassim") was, at all relevant times, Plaintiffs' employer and employed Plaintiffs individually and/or jointly.

16.     H.E. Sheikha Al Mayassa bint Hamad Al-Thani ("Mayassa") was, at all relevant

times, Plaintiffs' employer and employed Plaintiffs individually and/or jointly.

17.     Upon information and belief, Defendant Jassim and Mayassa are husband and wife and reside in the same household, which Plaintiffs were requested to serve.

18.     At all relevant times throughout Plaintiffs' employment, Jassim and Mayassa, both individually and collectively, had the discretionary power to create and enforce personnel decisions including but not limited to: hiring and terminating employees; setting and authorizing issuance of wages; maintaining employee records; setting employees' schedules; instructing, supervising and training employees; and otherwise controlling the terms and conditions for the Plaintiffs while they were employed by Defendants.

19.     Jassim and Mayassa set and/or approved all the unlawful practices complained of herein.

20.     Defendant Jassim and Mayassa are "covered employers" within the meaning of the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, and the NYLL § 2, and are jointly and severally liable, in their individual capacity, for the unpaid wages and other damages sought herein.

## FACTUAL ALLEGATIONS

### Plaintiffs' Work for Defendants

21.     Plaintiffs were formerly employed by Defendants, H.E. Sheikh Jassim bin Abdulaziz Al-Thani and H.E. Sheikha Al Mayassa bint Hamad Al-Thani, (collectively "Defendants") in their New York City residence.

22.     As part of their duties, Plaintiffs were required to accompany Defendants on family vacations across continental Europe, the Middle East, and across the United States, where they would be subject to long working hours, ranging from ninety (90) to a hundred

(100) hours per week, as the Defendants' children required constant supervision.

23.     Plaintiffs entered into employment agreements whereby Defendants requested Plaintiffs to "be completely flexible in their role, based upon the needs of Principal and her family" when traveling. *See* e.g. employment agreement of Chantelle McGuffie, annexed hereto as **Exhibit A**. The agreement further stated: "While traveling with the Principal, days off will not be granted. During these times, all staff is required to be on duty at all times without extra pay." These illegal agreements were drafted solely by the Defendants and Plaintiffs were required to accept their terms, or else forfeit their jobs.

24.     Throughout the duration of their employment, Plaintiffs did not have any supervisory authority nor did they exercise discretion or independent judgment with respect to matters of significance.

25.     Throughout the course of their employment, Plaintiffs consistently worked in excess of forty (40) hours per week but were not paid overtime. In addition, Plaintiffs were not paid at all during several days of their employment.

26.     Plaintiff Benjamin Boyd was employed by Defendants from September 7, 2018 to September 10, 2018 and from September 22, 2018 to October 1, 2018 as a private tutor.

27.     During the period of September 7, 2018 to September 10, 2018, Boyd underwent a "trial period" with the Defendants, after which he was formally hired. During this trial period, Boyd worked approximately 50 hours for which he was not paid at all.

28.     Boyd moved from Chicago, Illinois to New York to work for the Defendants after he took a leave of absence from the University of Chicago's Divinity School. Defendant Mayassa promised Boyd that he would be employed for a secured time period of three months (probationary period), whereby he could not be terminated.

29.     Prior to accepting the position, Boyd belabored the point with Defendants that the only reason he was willing to move to New York was because Defendants had guaranteed that he would not be terminated prior to the conclusion of the 90-day probationary period.

30.     Boyd was promised an annual salary of $80,000.00 in exchange for working regular 40-hour weeks.

31.     Boyd's duties as a private tutor included teaching and preparing math, history, reading, and vocabulary lessons to one of the Defendants' children. He was also required to accompany the child in recreational activities. For example, Boyd was expected to travel to Connecticut on the weekend of October 3, 2018 to go horseback riding with the family, but was terminated before that date.

32.     During the period of his employment with Defendants, Boyd worked approximately 50 hours per week.

33.     On September 30, 2018, Boyd had a conversation with Defendant  Mayassa and stated that if he was required to work overtime, then Defendants should pay him overtime.

34.     In retaliation for bringing up this issue, Defendant Mayassa terminated Boyd's employment the morning after.

35.     Throughout his short-lived employment with Defendants, Boyd was not compensated at all for his hours worked nor was he compensated at all for his overtime hours.

36.     Boyd never received wage statements or any other type of records outlining the number of hours he worked for the Defendants and the amounts owed to him.

37.     In addition, Boyd sustained economic and non-economic damages as a result of Defendants' retaliation, since he was suddenly left without a job in New York, after he had moved from Chicago and had taken the semester off specifically to work for the Defendants.

38.    Plaintiff Graham Bancroft was employed by Defendants from September 1, 2015 to October 2, 2018, as personal trainer for Defendants and their family members.

39.    Bancroft began his employment with Defendants in Doha, Qatar. On June 8, 2016, when Defendants moved to New York; Bancroft accompanied them.

40.    A part of his employment duties, Bancroft was required to frequently travel with the family for work purposes.

41.    Specifically, from around June 2016 to the end of August 2016, Bancroft accompanied the family on their summer vacation trip across Europe. On this trip, Bancroft visited Greece, Germany, Holland, Switzerland, among other European countries.

42.    From around July 2017 to the beginning of September 2017, Bancroft accompanied the family on their summer vacation trip across Europe and to Doha, Qatar.

43.    Lastly, from June 17, 2018 to September 1, 2018, Bancroft accompanied the family on their summer vacation trip across Europe, where they visited a handful of countries including France, Italy, Croatia, Germany, among others.

44.    Furthermore, during his two and half years when he was based in New York, Bancroft also traveled with the family to Miami three times in 2017 and also traveled to Boston in October 2017 and several times thereafter in 2018.

45.    Bancroft was compensated at a rate of 4,160.00 GPD (approx. $5,314.00 USD) per month, paid via direct deposit at the end of each month.

46.    While stationed in New York, Bancroft typically worked six to seven days per week, approximately 11 hours per day, with minimal meal breaks. His exact schedule varied from day to day.

47.    However, when Bancroft was requested to accompany the Defendants on family

trips or vacations, he was always required to work seven days per week and 14 or more hours per day. This is because he was required to be on duty until the Defendants' children went to sleep, which was often not until 10:00 p.m. or 11:00 p.m. each day.

48.     Accordingly, Bancroft worked approximately 70 hours per week while physically present in New York and more than 90 hours per week while working abroad for the Defendants.

49.     Throughout his employment with Defendants, Bancroft received a flat salary and was not compensated at all for his overtime hours of work.

50.     Bancroft never received paystubs from the Defendants outlining the amount of hours worked and his rate of pay.

51.      To date, Bancroft has not been compensated at all for his last five days of employment with the Defendants, namely from September 28, 2018 to October 2, 2018.

52.     In addition, Bancroft was terminated without a written 4-week notice, in breach of the terms of his employment agreement, and is therefore owed additional wages for four weeks of employment.

53.     Plaintiff Chantelle McGuffie was employed by Defendants from March 20, 2018 to October 2, 2018, as a security guard. *See* **Exhibit A**, employment agreement.

54.     Initially, McGuffie was contracted to work for Defendant Mayassa as her personal security detail. However, within a few months she was placed as a general security guard for the Defendants' family.

55.     A part of her employment duties, McGuffie was required to frequently travel with the family for work purposes.

56.     From June 17, 2018 to September 1, 2018, McGuffie accompanied the

8

Defendants on a trip to France and Italy.

57.     Further, during her employment with Defendants, McGuffie was required to travel to Washington D.C. in or around April 2018 for three days.

58.     McGuffie was compensated at a rate of 5,000 EUR (approx. $5,664 USD) per month, paid via direct deposit on the 19th day of each month.

59.     During the period of her employment with Defendants, McGuffie typically worked six (6) days per week, from Monday to Saturday from 7:00 a.m. to 8:00 p.m., with minimal meal breaks each day.

60.     However, when McGuffie was requested to accompany the Defendants on family trips, she would often be required to work 7 days per week and 14 hours per day.

61.     While traveling, McGuffie's shifts varied greatly. McGuffie was usually dismissed by Defendants when the Defendants' children went to sleep, which could be anywhere from 10:00 p.m. to 11:00 p.m.

62.     Accordingly, McGuffie worked approximately 75 hours per week while physically present in New York and 90 or more hours per week while working abroad for the Defendants.

63.     Throughout her employment with Defendants, McGuffie was paid a flat salary and was not compensated at all for her overtime hours.

64.      McGuffie never received paystubs from the Defendants outlining the amount of hours worked and her rate of pay.

65.     To date, McGuffie has not received her last paycheck. McGuffie is owed wages for approximately two weeks from September 19, 2018 to October 2, 2018.

66.     In addition, McGuffie was terminated without a written 4-week notice, in

breach of the terms of her employment agreement, and is therefore owed additional wages for four weeks of employment.

**Defendants' Unlawful Corporate Practices**

67.     Defendants repeatedly suffered or permitted Plaintiffs to work in excess of forty (40) hours per week without paying them the appropriate premium overtime pay of one and one-half times their regular rate of pay.

68.     Defendants failed to pay Plaintiffs <u>any</u> compensation during the last several days of their employment in violation of the FLSA's and NYLL's minimum wage requirements, and in further violation of their employment agreements.

69.     Defendants terminated Plaintiffs without notice, in further breach of their respective employment agreements.

70.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records. Defendants did not implement *any* procedure to keep track of Plaintiffs' hours of work or the hours of work of other employees.

71.     Plaintiffs were never provided with wage statements showing the amount of hours worked for Defendants in any given week of their employment.

72.     Plaintiffs were not provided with proper wage notices at the time of hire or at any time thereafter.

73.     Upon information and belief, while Defendants employed Plaintiffs, they failed to post notices explaining the minimum and overtime wage rights of employees under the FLSA and NYLL and failed to inform Plaintiffs of such rights.

74.     Plaintiffs have personal knowledge of other employees of Defendants who are similarly situated and who also worked hours for which they were not paid overtime wages.

**Defendants were joint employers of Plaintiffs and/or a single integrated employer**

75.     At all relevant times, Defendants were joint employers of Plaintiffs, acted in the interest of each other with respect to Plaintiffs' and other employees' remuneration, and had common policies and practices as to wages and hours, pursuant to 29 C.F.R. § 791.2 and NYLL § 2. Factors indicating joint employment include:

a.     Defendants  suffered or permitted Plaintiffs to work.

b.     Each of the Defendants acted directly or indirectly in the interest of one another in relation to Plaintiffs and similarly situated employees.

c.     Defendants each have an economic interest in the locations in which Plaintiffs and similarly situated employees worked.

d.     Defendants all simultaneously benefitted from Plaintiffs' work.

e.     Defendants each had either functional and/or formal control over the terms and conditions of work of Plaintiffs and similarly situated employees.

76.     In the alternative, all Defendants functioned together as a single integrated employer of Plaintiffs within the meaning of the FLSA and NYLL.

## COLLECTIVE ACTION ALLEGATIONS

77.     Pursuant to 29 U.S.C. §§ 203, 207, and 216(b), Plaintiffs bring their First cause of action as a collective action under the FLSA on behalf of themselves and the following collective:

All persons employed by Defendants at any time from November 15, 2015 to the present day (the "Collective Action Period") who

worked as non-exempt employees of the Defendants (the "Collective Action Members").

78.    A collective action is appropriate in these circumstances because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subject to Defendants' illegal policies of failing to pay overtime wage for all hours worked above 40 hours per week.

79.    Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

80.    The claims of the Plaintiffs stated herein are similar to those of the other employees.

## **FIRST CAUSE OF ACTION**

**Fair Labor Standards Act – Unpaid Overtime Wages**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

81.    Plaintiffs, on behalf of themselves and the Collective Action Members, reallege and incorporate by reference all allegations made in all preceding paragraphs as if fully set forth herein.

82.    Defendants failed to pay Plaintiffs and the Collective Action Members overtime wages for all hours worked above 40 hours per week thereby violating the FLSA, 29 U.S.C. § 207(a)(1).

83.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware, or should have been aware, that the practices described in this Complaint were unlawful. Accordingly, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255(a).

84.     As a result of the Defendants' violations of the FLSA, Plaintiffs and the Collective Action Members have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are thus entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216 (b).

## SECOND CAUSE OF ACTION

### Fair Labor Standards Act - Unpaid Minimum Wages

85.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

86.     Defendants violated 29 U.S.C. § 206, by failing to pay Plaintiffs any amount during several days of their employment. Specifically, McGuffie was not paid at all for her days of work during September 19, 2018 to October 2, 2018; Bancroft was not paid at all for his days of work during September 28, 2018 to October 2, 2018; and Boyd was paid nothing throughout the course of his employment.

87.     Due to Defendants' violations of the FLSA, Plaintiffs are entitled to recover from Defendants their unpaid minimum wages for the time period outlined above, liquidated damages, reasonable attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216 (b).

## THIRD CAUSE OF ACTION

### Fair Labor Standards Act – Prohibited retaliation
### (Brought on behalf of Plaintiff Boyd only)

88.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

13

89.     Defendants retaliated against Plaintiff Boyd by terminating his employment after Plaintiff Boyd raised his concerns that he did not wish to work overtime without being paid overtime, in violation of 29 U.S.C.A. § 215(a)(3).

90.     Due to Defendants' unlawful discrimination against Boyd, he has suffered great hardship and is entitled to recovery of back wages, front wages, liquidated damages, damages for emotional distress, punitive damages, attorney's fees, costs, and other such damages of an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### New York Labor Law – Unpaid Overtime Wages

91.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

92.     Defendants failed to pay Plaintiffs overtime wages for all hours worked above 40 hours per week thereby violating the NYLL §§ 190 *et seq.* and the New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142-2.2.

93.     Defendants' failure to pay Plaintiffs their overtime compensation lacked a good faith basis within meaning of NYLL § 663.

94.     Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recovery of their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, pre-judgment and post-judgment interest, pursuant to NYLL § 198 (1-a).

## FIFTH CAUSE OF ACTION

### New York Labor Law - Unpaid Minimum Wages

95.     Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs as if fully set forth herein.

96.     Defendants violated NYLL § 652 and the supporting New York State Department of Labor regulations, including 12 N.Y.C.R.R. Part 142-2.1, by failing to pay Plaintiffs any amount during several days of their employment. Specifically, McGuffie was not paid at all for her days of work during September 19, 2018 to October 2, 2018; Bancroft was not paid at all for his days of work during September 28, 2018 to October 2, 2018; and Boyd was paid nothing throughout the course of his employment.

97.     Defendants' failure to pay Plaintiffs the minimum wage, for the time period outlined above, lacked a good faith basis within the meaning of NYLL § 663.

98.     Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid minimum wages for the time period outlined above, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, pursuant to NYLL § 198 (1-a).

## SIXTH CAUSE OF ACTION

### New York Labor Law- Unpaid Straight Wages

99.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

100.     Defendants violated NYLL § 191(d) which requires Defendants to pay Plaintiffs their wages in accordance with the agreed upon terms of their employment, by failing to pay Plaintiffs any amount during several days of their employment. Specifically, McGuffie was not paid at all for her days of work during September 19, 2018 to October 2, 2018; Bancroft was not paid at all for his days of work during September 28, 2018 to October 2, 2018; and Boyd was

paid nothing throughout the course of his employment.

101.     McGuffie and Bancroft are also entitled to 4 weeks of additional wages since Defendants terminated their employment without providing a written 4 week notice of termination, as stipulated by their employment contracts.

102.     Defendants have further violated NYLL § 191(3) which requires employers to pay an employee's wages not later than the regular pay day after termination of employment has occurred.

103.     Due to Defendants' failure to pay Plaintiffs their required compensation at the agreed upon date, Plaintiffs have suffered damages and are entitled to an amount of all unpaid wages due, liquidated damages equal to the amount of the unpaid wages, pre-judgment and post-judgment interest, attorneys' fees, and costs pursuant to NYLL § 198(1-a).

<u>**SEVENTH CAUSE OF ACTION**</u>

**New York Labor Law – Failure to Provide Wage Statements**

104.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

105.     Defendants have failed to provide Plaintiffs with wage statements listing, *inter alia*, the amount of hours they worked each week of their employment with Defendants and the rate received for such hours.

106.     Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants statutory damages of Two Hundred and Fifty dollars ($250) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000), pursuant to NYLL § 198 (1-d).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## EIGHTH CAUSE OF ACTION

### New York Labor Law – Failure to Provide Wage Notice

107.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

108.    Defendants failed to provide Plaintiffs at the time of hiring or at any point thereafter, a notice in their primary language containing, *inter alia*, their regular hourly rate and overtime rate of pay, in violation of NYLL § 195(1).

109.    Due to Defendants' violations of the NYLL § 195(1), Plaintiffs are entitled to recover from Defendants statutory damages of Fifty dollars ($50) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000) pursuant to NYLL § 198 (1-b).

## NINTH CAUSE OF ACTION

### New York Labor Law – Prohibited retaliation
### (Brought on behalf of Plaintiff Boyd only)

110.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

111.    Defendants retaliated against Plaintiff Boyd by terminating his employment after Plaintiff Boyd raised his concerns that he did not wish to work overtime without being paid overtime, in violation of 29 NYLL § 215(1).

112.    Due to Defendants' unlawful discrimination against Boyd, he has suffered great hardship and is entitled to recovery of back wages, front wages, liquidated damages up to a maximum of Twenty Thousand Dollars ($20,000.00), damages for emotional distress, punitive damages, attorney's fees, costs, and other such damages of an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs seek the following relief:

A.       Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative collective action members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiff in the FLSA claims in this action;

B.       Issuance of a declaratory judgment that the practices complained of in this complaint are unlawful under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.,* New York Labor Law, Article 6, §§ 190 *et seq.*, and supporting New York State Department of Labor regulations;

C.       Unpaid minimum and overtime wages under the FLSA and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b) and the supporting United States Department of Labor regulations;

D.       Unpaid minimum and overtime wages under the NYLL, and an additional and equal amount as liquidated damages pursuant to NYLL §198(1-a) and § 663(1);

E.       Unpaid straight wages and an additional and equal amount as liquidated damages, for the time period whereby Plaintiffs were not compensated at all in accordance with the agreed-upon terms of the employment, pursuant to NYLL §191(3);

F.       Civil penalties of One Thousand One Hundred Dollars ($1,100.00) for each of Defendants' willful and repeated violations of the FLSA pursuant to 29 U.S.C. § 216(b);

G.       A permanent injunction requiring Defendants to pay all statutorily required wages pursuant to the FLSA and NYLL;

H.      If liquidated damages pursuant to FLSA, 29 U.S.C. § 216(b) are not awarded, an award of pre-judgment interest pursuant to 28 U.S.C. § 1961;

I.       An award of statutory damages for Defendants' failure to provide Plaintiffs with wage notices at the time of their respective hiring, or at any point thereafter, pursuant to NYLL § 198 (1-b);

J.       An award of statutory damages for Defendants' failure to provide Plaintiffs with accurate wage statements pursuant to NYLL § 198 (1-d);

K.      An award of back wages, front wages, liquidated damages, damages for emotional distress, and punitive damages for the Defendants' prohibited retaliation against Plaintiff Boyd pursuant to 29 U.S.C. § 215(3);

L.       An award of front pay, lost compensation, damages for emotional distress, punitive damages, and liquidated damages up to a maximum of Twenty Thousand Dollars ($20,000.00), for Defendants' prohibited retaliation against Plaintiff Boyd pursuant to NYLL § 215(2)(a);

M.      An award of pre-judgment interest of nine per cent per annum (9%) pursuant to the New York Civil Practice Law and Rules §§ 5001-5004;

N.      An award of post-judgment interest pursuant to 28 U.S.C. § 1961 and/or the New York Civil Practice Law and Rules § 5003;

O.      An award of attorney's fees, costs, and further expenses up to Fifty Dollars ($50.00), pursuant to 29 U.S.C. § 216(b), and NYLL §§ 198 and 663(1);

P.      Such other relief as this Court shall deem just and proper.

Dated:  New York, New York
        November 15, 2018

Respectfully submitted,

**PARDALIS& NOHAVICKA, LLP**

By:      /s/Ariadne Panagopoulou
        Ariadne Panagopoulou (AP-2202)
        *Attorneys for Plaintiffs*
        950 Third Avenue, 25th Floor
        New York, New York 10022
        Tel: 718.777.0400 | Fax: 718.777.0599
        Email:  ari@pnlawyers.com

NOTICE OF CONSENT TO JOIN, PURSUANT TO 29 U.S.C. §216(h)

## FAIR LABOR STANDARDS ACT CONSENT FORM

I consent to be a party plaintiff in a lawsuit against H.E. Sheika Al mayassa bint Hamad and H.E. Sheika Jassim bin Abdola (located at _____ ) and/or related entities and individuals in order to seek redress for violations of Fair Labor Standards Act, pursuant to 29 U.S.C. section §216(b). I hereby designate Pardalis & Nohavicka LLP to represent me in such a lawsuit.

Dated: 10/17/2018

_____
Signature

Benjamin Boyd
Print

5114 S Kimbark Ave
3N, Chicago, IL 60615
Address

602 388 2391
Telephone

NOTICE OF CONSENT TO JOIN, PURSUANT TO 29 U.S.C. §216(h)

**FAIR LABOR STANDARDS ACT CONSENT FORM**

I consent to be a party plaintiff in a lawsuit against H.E. Sheika Al Mayaaa bint Hamad and
at _____ H.E. sheika Jassim bin Abdula (located
) and/or related entities and individuals in order to
seek redress for violations of Fair Labor Standards Act, pursuant to 29 U.S.C. section
§216(b). I hereby designate Pardalis & Nohavicka LLP to represent me in such a lawsuit.


Dated: 10/17/2018



_____
Signature



G. BANCROFT
Print



244 EAST
78TH STREET
Address



+4479 58028018
Telephone

NOTICE OF CONSENT TO JOIN, PURSUANT TO 29 U.S.C. §216(h)

### FAIR LABOR STANDARDS ACT CONSENT FORM

I consent to be a party plaintiff in a lawsuit against _H.E. Sheika Al Mayassa bint Hamad and_ _H.E. Sheika Jassim bin Hamad_ located at _____) and/or related entities and individuals in order to seek redress for violations of Fair Labor Standards Act, pursuant to 29 U.S.C. section §216(b). I hereby designate Pardalis & Nohavicka LLP to represent me in such a lawsuit.

Dated: 10/17/2018

_____
Signature

CHANTELLE McGUFFIE
Print

221 E 50TH ST
_____
Address

917 660 7544
Telephone  + 44 781 41 272 84 .

# EXHIBIT A

## EMPLOYMENT AGREEMENT

This agreement is between

**Chantelle McGuffie**
("CPO")

and

**Sheikha Al Mayassa bint Hamad Al-Thani**
(the "PRINCIPAL")

on this day of March 6, 2018

EMPLOYMENT

The start date of this contract will be March 20, 2018 and will be valid for the period of 1 year, on a rolling contract basis.

The first 4 weeks will be considered a trial period.

At any point during this period, either party may terminate the agreement of employment with a reasonable 1-3 days notice.

After the stated trial period, the CPO is required to give 4 weeks notice should she choose at any point to terminate the agreement.

SALARY & BENEFITS

The annual salary will be EUR 60,000 and EUR 5,000 will be paid on the 19th of each month, starting on April 19th.

The CPO will be responsible for all federal taxes and associated costs owed to their country of citizenship.  The Principal agrees to provide all necessary paperwork requested by the CPO for personal tax forms required by their country of citizenship.

CPO is required to become a resident of Doha, Qatar and obtain a Qatari ID. Only then can the Principal provide a legal working visa for employment in the Principal's country of residence.

The Principal will provide medical insurance and 4 weeks paid holiday.

The Principal will provide one return trip each year (Economy Class).

WORKING SCHEDULE

The CPO will work 6 days a week, on call with 1 day off per week.

The CPO will be allowed private time to develop their martial arts, fitness, and other security related skills.

TRAVEL

When traveling with the family, the CPO agrees to be completely flexible in their role, based upon the needs of Principal and her family.

While traveling with the Principal, days off will not be granted. During these times, all staff is required to be on duty at all times without extra pay.

Travel related expenses will all be assumed by the Principal.

RESPONSIBILTIES

General duties (not an exhaustive list)

- Ensuring unarmed close protection and safety of the Principal during all outings and activities, including the family, as needed
- Assisting the Security Manager with general office work, risk assessment & planning, writing SOP's, analyzing intelligence, surveillance, counter surveillance, close combat training of the security team, and occasionally driving if requested
- Leading the children by example of good behavior, etiquette, appropriate language, table manners and general cleanliness
- Assisting with personal pick-ups/errands for the Principal, as needed
- Traveling with the Principal and the family when required

ACCOMODATION

The Principal shall provide accommodations for the CPO during the contract period.

The CPO will be provided with a separate, fully furnished room in an apartment that she will share with other employees.

The CPO will be responsible for paying utilities not included in the rent price, such as electric, water, gas, etc.

BOARD

The CPO will be provided with healthy lunches during work days.

The CPO will be responsible for own meals on days off, unless otherwise instructed.

EXPENSES

All expenses that are work related will be assumed by the Principal.

The Principal will provide a work phone.

DRESS CODE

Professional attire, as determined by supervisor.

No sleeveless tops or shorts.

Hair and nails should always be kept clean and neat.

Appropriate hygiene is mandatory (washed hair, clean nails, deodorant, etc).

TERMINATIONS

After the stated trial period, should any of the parties ("CPO or Principal") wish to terminate this agreement, for any reason, each party is required to give the other party a written 4 weeks notice.

Exceptions:

Should the CPO leave without cause once the contract period has begun, the Principal is under no obligation to provide salary payment for the ongoing month, and any deposits given in advance to the CPO must be returned.

This contract may be terminated immediately if the CPO engages in any illegal, neglectful, or abusive conduct.

In the case that the quality of the CPO's work negatively affects the Principal and/or the family, the CPO will receive a notice of 1 day and the agreement will be terminated immediately.

The Principal has the right to immediately terminate this agreement should the information provided by the CPO prove to be falsified or untrue. All payments due will be considered null and void. No travel expenses will be covered.

The Principal will, within reason, cover travel expenses for the CPO to return to their country of citizenship.

The undersigned CPO and Principal agree to all the terms described herein.  The agreement was reached with the mutual consent of both parties.

_____          _____
              Al Mayassa bint Hamad Al-Thani                  Date

_____          _____
              Chantelle McGuffie                              Date