

June 1, 2019

**VIA ECF**
------------------------------------------
Honorable J. Paul Oetken
United States District Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

        Re:   *Boyd et al v. Abdulaziz Al- Thani et al*
               Civil Action No.: 1:18-cv-10698-JPO

Dear Honorable J. Paul Oetken:

      This office represents the Plaintiffs in the above-referenced matter. We write jointly with Counsel for the Defendants, Proskauer Rose LLP (by Allan S. Bloom, Esq., and Samantha L. Regenbogen, Esq.) to advise the Court that the Plaintiffs and the Defendants (collectively the "Parties") have reached a settlement in the above-referenced action and to seek Your Honor's approval of the terms of the Settlement Agreement, annexed hereto as **Exhibit A.**[1]

**I. THE SETTLEMENT AGREEMENT IS FAIR AND REASONABLE**

    **1.  Plaintiffs' Allegations, Defendants' Defenses and Issues in Dispute**

      Plaintiffs Benjamin Boyd, Chantelle McGuffie, and Graham Bancroft filed this action on November 15, 2018 alleging unpaid minimum and overtime compensation under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Plaintiffs further alleged unpaid straight wages, and failure to provide them with wage statements and wage notices pursuant to the NYLL §§ 195(1) and (3). Finally, Plaintiff Benjamin Boyd brought a claim of retaliation under the FLSA and the NYLL. Rene Fernandez and Eleanor Azul joined this case as opt-in Plaintiffs on March 6, 2019.

---

[1] In accordance with Section 3 of the Settlement Agreement, the parties intend to file a stipulation of dismissal of this case once the settlement funds are received in Plaintiffs' Counsel's escrow account. For this reason, we respectfully request the court to maintain jurisdiction over this action until such stipulation is filed.

35-10 Broadway, Suite 201, Astoria, NY 11106 | 135 East 57th Street, 11th Floor, New York, NY 10022
P: 718.777.0400 | F: 718.777.0599 | contact@pnlawyers.com | www.pnlawyers.com

While Plaintiffs' allegations are numerous and vary from Plaintiff to Plaintiff, the sum and substance of the Plaintiffs' allegations (as well as alleged damages) arise from Defendants' alleged failure to compensate Plaintiffs overtime wages for all hours worked above 40 hours per week. Defendants allegedly paid each Plaintiff a fixed weekly or monthly salary with no variation based on hours worked. Opt-in Plaintiffs Fernandez and Azul further alleged that the monthly salary that they received was below the applicable minimum wage. Finally, Plaintiffs alleged that they were not provided with the required wage statements and wage notices as required by the NYLL §§ 195(1) and (3).

Defendants disputed Plaintiffs' allegations on various grounds, including the merits of Plaintiffs' allegations. Specifically, Defendants claimed that due to the nature of Plaintiff's duties (who were all primarily domestic service employees for Defendants' family), there was significant downtime during their allotted schedules where Plaintiffs did not perform any duties for the Defendants and were free to engage in their own personal activities, therefore limiting the number of compensable hours under the FLSA and the NYLL. Accordingly, Defendants contended that Plaintiffs did not work overtime. Furthermore, as described in Plaintiffs' complaint, there were multiple weeks throughout Plaintiffs' employment where Plaintiffs did not perform any work in the United States. Defendants claimed that such periods were non-compensable since the FLSA exempts from its coverage "any employee whose services during the workweek are performed in a workplace within a foreign country." *See* 29 U.S.C. § 213(f); *see further Hart v Dresdner Kleinwort Wasserstein Sec., LLC*, 06 CIV. 0134 (DAB), 2006 WL 2356157, at *7 [SDNY Aug. 9, 2006] (noting that the NYLL does not apply extraterritorially). Defendants also raised the defense of exemption with respect to Plaintiffs who were paid on a salary basis and whose duties qualified them for various exemptions under federal and/or state law.

Finally, Defendants – who are members of the royal family of Qatar – noted that if they received certification from the State Department, they would potentially be considered diplomats entitled to full immunity, resulting in immediate dismissal of the litigation for lack of subject matter jurisdiction.

Defendants ultimately questioned the motives behind Plaintiffs' pursuit of this action. Defendants claimed that prior to the commencement of this lawsuit, the named Plaintiffs, through a representative named Shawn Deehan, attempted to unlawfully extort the Defendants by demanding $5 million in exchange for remaining silent about certain matters concerning Defendants' family. Such actions were not only criminal, but casted serious doubt as to whether Plaintiffs were truthful witnesses. Accordingly, although Plaintiffs' alleged extortion activities did not necessarily alter Plaintiffs' entitlement to back wages, Defendants argued that the credibility of the named Plaintiffs - and therefore their ability to convince a potential jury that they suffered any damages in the first place - was severely compromised.

In light of the above disputes, and following extensive settlement negotiations, including a 13-hour mediation session before David Ross, Esq., a JAMS mediator with significant

experience in employment litigation and dispute resolution, the parties decided to resolve Plaintiffs' FLSA claims for a total of $150,000.[2]

### 2. The Proposed Settlement Amount Is a Fair and Reasonable Compromise of Plaintiffs' FLSA Claims

The Court should approve the Settlement so long as it reflects a "fair and 'reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

According to *Wolinksky*, "in determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Id*.

In the instant matter, both Plaintiffs' counsel and Defendants' counsel performed damage calculations according to Plaintiffs' best case scenario at trial. According to Plaintiffs' damage calculations, Plaintiffs' best case scenario of back wages and liquidated damages at trial, pursuant to the FLSA, was approximately $710,000; according to Defendants' damage calculations, Plaintiffs' best case scenario of back wages and liquidated damages at trial, pursuant to the FLSA, was approximately $110,000.

It should be noted that both Plaintiffs' and Defendants' calculations were based on the presumption that Plaintiffs' salaries represented compensation for the first 40 hours of Plaintiffs'

---

[2] For full disclosure, the parties hereby inform the court that they have reached a separate confidential agreement regarding Plaintiffs' claims pursuant to the NYLL, as well as other potential claims that Plaintiffs have or may have had against Defendants. Such agreement expressly provides for separate consideration to Plaintiffs and does not include an FLSA release. Accordingly, it does not need to be presented to the court for approval.

It should be noted that such bifurcated agreements (i.e. agreements that release FLSA and NYLL claims separately) have been "routinely" approved in this district. *See Chowdhury v Brioni Am., Inc.*, 2017 Wage & Hour Cas 2d (BNA) 427087 [SDNY Nov. 29, 2017] ("Judges in this District routinely approve "bifurcated settlement agreement[s], in which the parties submit their FLSA agreement for court review and approval ... but enter into a separate [agreement]" that addresses the non-FLSA claims, which does not require judicial and may contain provisions that would be impermissible under Cheeks"); *Yunda v SAFI-G, Inc.*, 2017 Wage & Hour Cas 2d (BNA) 141703 [SDNY Apr. 28, 2017] ("I conclude that such a bifurcated settlement agreement is permissible.....Because the settlement of the FLSA claim is subject to the same review that is applicable in cases where there is a single settlement agreement, I conclude that the mechanism proposed by the parties does not run afoul of Cheeks. The fact that there may be provisions in the NYLL settlement agreement that could not be included in the FLSA settlement is immaterial because the NYLL settlement agreement does not require judicial approval.")

workweek. *See Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F.Supp.2d 372, 395 (E.D.N.Y.2012). Accordingly, Plaintiffs' weekly salaries were divided by 40 (to determine the regular hourly rate) and overtime was calculated by multiplying any hours in excess of 40 by 1.5 times the regular rate. While this calculation is certainly proper when dealing with employees that work in the hospitality industry, courts are divided as to whether this is the appropriate way to calculate overtime for employees working in other industries. *Compare* Hospitality Wage Order with Miscellaneous Wage Order stating that when an employee is paid on a salary basis, "the regular hourly wage rate shall be determined by diving the total hours worked during the week into the employee's total earnings." 12 N.Y.C.R.R. § 142-2.16 (emphasis added). *See also* 29 C.F.R. § 778.113(a). Assuming that damage computations based on Plaintiffs' allegations were made using this alternate method (i.e. dividing Plaintiffs' weekly salaries by the alleged total number of hours worked in the week, and multiplying any overtime hours by 0.5 times the regular rate), Plaintiffs' damages would be *substantially* less.

Nevertheless, even utilizing the parties' liberal calculations of Plaintiffs' alleged damages, Plaintiffs are recovering more than 20% of their best case scenario of damages under the FLSA (using Plaintiffs' damage calculations), and more than 100% of their best case scenario of damages under the FLSA (using Defendants' damage calculations).

The settlement itself will enable the parties to avoid the anticipated burdens and expenses of this litigation. In particular, while, at the time of settlement, the parties had made significant headway with discovery, no depositions were conducted. Due to the number of parties involved, the parties anticipated taking at least 10 depositions, including both party and non-party depositions. The deposition process would have been further complicated by the fact that *all* five Plaintiffs reside out-of-state, and four out of the five Plaintiffs reside outside the United States. Following depositions, both parties anticipated motion practice pertaining to discovery, as well as the briefing of summary judgment motions.

Moreover, the litigation risks faced by the Plaintiffs were grave. Defendants presented meritorious arguments that challenged both this court's jurisdiction over this case (in light of their potential diplomatic immunity) and the merits of Plaintiffs' claims. And while Plaintiffs presented some evidence of their hours worked and rate of pay, ultimately this case rested on the witnesses' testimony of Plaintiffs' days and hours of work each week of their employment, and how much time in their shifts Plaintiffs spent actually performing work for their Defendants. As noted above, Defendants presented valid reasons as to why the Plaintiffs' actual schedules did not result in overtime, and as to why many of the weeks in which they performed services for the Defendants were not covered by the FLSA or NYLL in the first instance.

Considering the above factors, Plaintiffs' counsel believes that this settlement is an excellent compromise of Plaintiffs' FLSA claims and should be approved as fair and reasonable. *See, Meigel v. Flowers of the World NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan 9, 2012) ("Typically, courts regard the adversarial nature of a FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve settlement.").

It should also be noted that the settlement agreement was the product of arm's length negotiation between experienced wage and hour Counsel. This settlement was reached following substantial discovery, numerous settlement negotiations, and a mediation session with an experienced mediator. *See Hernandez v. Anjost Corp.*, 11 CIV. 1531(AT), 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("[a] settlement reached with the help of a third-party neutral, enjoys a presumption that the settlement achieved meets the requirements of due process.") There is nothing in the record to indicate any type of fraud or collusion.

Finally, the terms of the Settlement Agreement are in accordance with the decision of *Cheeks v. Freeport Pancake House, Inc.*, No. 14-299 (2d Cir. 2015). The settlement allows for the settlement agreement to be publically filed for the purpose of judicial review for fairness. The settlement agreement does not contain any confidentiality or non-disparagement provisions, and the release is limited to wage and hour claims.

## II. THE ATTORNEY'S FEES REQUESTED ARE FAIR AND REASONABLE

It is within the court's discretion to award attorney's fees based on either the lodestar method or the percentage of the fund. *See Vasquez v. TGD Grp., Inc.*, No. 14-CV-7862 (RA), 2016 WL 3181150, at *4 (S.D.N.Y. June 3, 2016). "'[T]he trend in this Circuit is toward the percentage method,' although it is for district court to determine 'the appropriate method' in a particular case." *Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), 2016 WL 1222347, at *2 (S.D.N.Y. Mar. 24, 2016).

It is respectfully submitted that the attorney's fees requested are reasonable whether assessed by the percentage of fund method, or by the lodestar method.

### 1. The Percentage of the Fund method

Pursuant to the engagement agreement between our firm and the clients, we respectfully request recovery of a third of the total settlement amount amounting to $50,000.00 as attorney's fees and costs.[3] Everyone covered by this settlement has already agreed to the fee provided for in the settlement.

---

[3] Again, for full disclosure and for the avoidance of any doubt, the court is reminded that Plaintiffs have reached a separate confidential settlement agreement with the Defendants which compromises actual and potential claims under the NYLL and any other claims that Plaintiffs may have had against Defendants. Plaintiffs' Counsel is recovering additional substantial amounts of funds pursuant to such agreement.

However, as outlined above (*see* fn. 2), the court need not review or approve any of the terms of such settlement (including Plaintiffs' Counsel's recovery of attorney fees and costs pursuant to such agreement), since such agreement does not resolve any of the Plaintiffs' FLSA claims. Nevertheless, Plaintiffs' Counsel are fully prepared to submit - and justify - their attorney fee award pursuant to this separate agreement by making any required submissions under seal for the court's *in camera* review, should this court so require.

Contingent fee agreements in wage and hour cases favor public policy and are "meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, 2010 WL 69359 at *3 (S.D.N.Y. 2010). There is ample authority in this circuit holding that a 33% attorneys' fee is well within the range of fees typically awarded in wage and hour cases. *See Clark v. Ecolab, Inc.,* No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *Beckman v. KeyBANK, NA*, 293 F.R.D. 467, 481 (S.D.N.Y.2013) (awarding 33% of a $4.9 million settlement fund which amounted to $1.6 million in an FLSA class action).

2. **"Cross-check" with the Lodestar Method**

Following *Goldberger v. Integrated Resources, Inc.*, 209 F. 3d 43 (2d Cir. 2000), the trend in the Second Circuit has been to apply the percentage method and to loosely use the lodestar method as a "cross check." *Id*. at 50. In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Id*. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id*.

In the instant matter, our firm spent more than 160 hours litigating the Plaintiffs' FLSA claims. *See* **Exhibit B**, Plaintiffs' counsel's billing records.[4] The majority of the work in this case was performed by the undersigned, Plaintiffs' counsel Ariadne Panagopoulou, Esq. The following is a brief description of my resume:

> I am a dual-qualified lawyer in the jurisdictions of New York and England & Wales (Solicitor, Law Society of England and Wales). I received an LL.B. degree from the University of Edinburgh with First Class Honors, with my degree dissertation being ranked joint first in a class of 158 students. I subsequently taught law school courses at the University of Edinburgh for which I received a Teaching award. I then undertook an LL.M. degree at Harvard Law School. My studies at Harvard were funded by three independent merit-based scholarships (coming from Harvard University, Greece and Cyprus), as well as my work as a research assistant at HLS.
>
> At Pardalis & Nohavicka, LLP, I am responsible for managing all of the firm's employment cases (including wage and hour, discrimination/sexual harassment, family and medical leave, E.R.I.S.A., restrictive covenants, and whistleblower actions) from the commencement of litigation up until trial and/or settlement. I have acted as lead counsel representing both employers and employees in a vast array of matters before federal and state courts, as well as, federal and state agencies, including the NLRB, the EEOC, the OSHA, the NYS Division of Human Rights, the NYC Commission of Human Rights, and the NY Department

---

[4] The billing records annexed hereto as **Exhibit B**, do not include the separate time spent by Plaintiffs' Counsel to draft and negotiate the separate agreement reached between the parties.

of Labor. I have also conducted trials as lead trial counsel representing both Plaintiffs and Defendants in wage and hour matters. *See e.g. Papakleovoulou et al v. A 1 Souvlaki Corp. et al,* 16-cv-01626 (E.D.N.Y. Nov. 2017); *Zygouras v. BR Construction & Stone, Inc. et al*, 15-cv-03835 (E.D.N.Y. Oct. 2016); *Peralta Candia et al v. Hop Enterprises Inc. et al*, 15-cv-5122 (S.D.N.Y. June 2015). I recently won a motion against the NLRB at the Second Circuit Court of Appeals, where an appeal is currently pending. *See Parkview Lounge LLC v. NLRB*, 18-1600 (Second Cir., Aug. 2018, Dkt. No. 79).

My requested hourly rate is $350.00. This rate has been approved by multiple judges in this district. *See e.g. Lazo v. Empire Management America Corp et al*, 1:17-cv-07645-ER (S.D.N.Y. 04/03/2018) annexed hereto as **Exhibit C**, p. 4 (hourly rate of $350.00 was approved as reasonable); *see further Pelekis v. SeaFood of the Gods Group, LLC et al* 1:17-cv-09245-KHP (S.D.N.Y. 04/20/2018) annexed hereto as **Exhibit D**, p. 5 and 6 (recognizing my experience in wage and hour litigation and finding rate between $300 and $400 as reasonable).

In addition, Vanessa Chesnut, a law clerk, has assisted in performing work in this matter. Ms. Chesnut graduated from New York University summa cum laude where she pursued a double major in Political Science and Spanish, with a minor in Computer Science. She has received several merit based scholarships, namely The Harry S. Truman Scholarship Program, the Marc and Ruti Bell Public Service Scholarship, the Benjamin A. Gilman International Scholarship Program, and the Dean's Circle Scholarship. Her requested hourly rate is $125.00 per hour. "[H]ourly rates between $120 and $150 have been found to be reasonable", with respect to law clerks. *Manley v Midan Rest. Inc.*, 2017 Wage & Hour Cas 2d (BNA) 96417 [SDNY Mar. 27, 2017].

Finally, Joseph Nohavicka, Esq., a partner with more than 20 years of experience in employment litigation, closely supervised all the work done in this matter.

Accordingly, a multiplication of the hours worked by the requested hourly rates brings our attorney's fees to approximately $72,000; an amount which exceeds the amount requested under Plaintiffs' counsel's contingent fee arrangement. It should be noted that this case has not yet concluded and it is very likely that Plaintiffs' counsel may need to expend additional time to appear before Your Honor for a fairness hearing, make any additional submissions and/or take steps to enforce the settlement terms should Defendants default.

As such, Plaintiffs' counsel's attorney's fees should be approved as fair and reasonable.

## III. CONCLUSION

For all the reasons discussed above, we respectfully request that the Court approve the parties' settlement agreement and, further, approve the amount of attorney's fees and costs requested herein.

Respectfully submitted,

**PARDALIS & NOHAVICKA, LLP**

_/s/Ariadne Panagopoulou_____
Ariadne Panagopoulou, Esq.
*Counsel for Plaintiffs*